In the Matter of Malen A. JUZWIAK, Debtor–Appellant.

No. 95–3826.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1996.

Decided July 15, 1996.

Christine Renee Hasart Olsen (argued), Byrne, Goyke, Olsen & Tillisch, Wausau, WI, for Malen A. Juzwiak.

Daniel E. Dunn (argued), Fitzpatrick, Smyth, Dunn & Fitzpatrick, LaCrosse, WI, for Cargill, Inc.

Before BAUER, ESCHBACH, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Malen Juzwiak, who filed for bankruptcy in August of 1994, appeals the district court's decision to deny the discharge of his debts, including a $200,000 debt he owes to Cargill, Inc. The district court, reversing the bankruptcy court, denied the discharge pursuant to 11 U.S.C. § 727(a)(3), finding that Juzwiak failed to keep or preserve records adequately disclosing his business transactions. We affirm the district court's decision.

## I.

Malen Juzwiak operated a trucking business from 1988 to 1993. He predominantly hauled grain, which he purchased from about five suppliers, including Cargill, and resold to approximately three buyers. At its largest, Juzwiak's business owned three trucks and employed two other drivers. Although Juzwiak did not require many employees, the grain sale transactions he engaged in involved substantial sums of money. The business reported over five million dollars in sales on its 1993 income tax return.

Juzwiak began purchasing grain from Cargill—on credit—in January of 1993. At Cargill's request, Juzwiak submitted a financial statement purporting to show the financial condition of Juzwiak Trucking in August of 1993. The figures Juzwiak submitted to Cargill for the business' accounts receivable balance and checking account balance were not substantiated and were apparently significantly higher than the actual balances reflected in the records. In addition, Juzwiak did not disclose on the statement a restitution debt of approximately $87,000 that he owed. By October of 1993, Juzwiak had "bounced" several checks to Cargill due to insufficient funds. When Cargill closed Juzwiak's account in November, the outstanding balance was $203,714.92. Soon after, Juzwiak Trucking went out of business and Juzwiak filed a personal bankruptcy. Juzwiak sought to have his debts discharged. Cargill objected on the basis of § 727(a)(3), claiming Juzwiak had failed to keep adequate records.

Juzwiak ran his business through a single checking account. He testified that he deposited all grain sale proceeds into the account and made all grain purchases with funds from the account. Juzwiak, however, occasionally used the account for paying personal expenses. Additionally, after writing

several bad checks to Cargill in October of 1993, Juzwiak opened a new checking account and ceased depositing any funds into the overdrawn account. Juzwiak testified that he was able to track sales through checking account deposit slips and expenses through duplicate copies of checks. He stated that at the end of each year he would categorize his expenses and income from his canceled checks and deposit slips, summarize the information in a notebook, and turn it all over to his income tax preparer.

The records that were supplied to Juzwiak's creditors during the bankruptcy process consisted of checking account ledgers, canceled checks, deposit slips, bank statements, and a 1993 income tax return. The notebook summaries were not disclosed. Juzwiak's records do not reflect the source of the funds deposited into the account. In other words, the deposit slips do not identify who the money came from, nor do they indicate how much grain was purchased at what price. The documentation also fails to disclose which business supplied the grain sold. In addition, the records do not include substantiation of Juzwiak's business expenses and his checks to grain suppliers do not detail how much grain was purchased at what price. Further, Juzwiak submitted no records documenting employee payroll deductions or payroll taxes.

The bankruptcy court found that there was no evidence refuting Juzwiak's claim that all grain sales and purchases went through the checking account. The district court, however, modified this factual determination to the much more narrow finding that it was Juzwiak's practice to place grain sale proceeds into the account. The district court made this modification after Cargill pointed out on appeal that the amount of gross sales reported on Juzwiak Trucking's 1993 income tax return was almost one million dollars more than the total amount of money deposited into the business checking account. For whatever reason, this discrepancy was not brought to the attention of the bankruptcy court. Although the district court discussed the difference in income, it does not appear that it factored this difference into its analysis, as the court noted that it would have found Juzwiak's records inadequate even without any evidence of a discrepancy.

At the trial before the bankruptcy court, two expert accountants testified regarding the adequacy of Juzwiak's records. Gerald Nelson, Juzwiak's expert and an accountant for twenty-three years for many small businesses and trucking companies, testified that many of his clients keep records in a method similar to that used by Juzwiak. He stated that generally the records produced through this method are sufficient to prepare financial statements and accurate tax returns. He did admit, however, that his trucking clients typically retained invoices of their grain sales and their expenses and that the Internal Revenue Code actually requires such invoices to substantiate expenses and sales.

Frank Gillette, Cargill's expert and an accountant with fifteen years of experience, testified that after reviewing Juzwiak's records, it appeared that the checking account was used for a mix of business and personal expenses. He also noted that Juzwiak's records were deficient in that they did not disclose who purchased the grain, how much was purchased at what price, who supplied the grain at what price, or how much inventory Juzwiak held at any particular time. In addition, he stated that there were no records to substantiate Juzwiak's reported expenses. Gillette also testified, based on his experience, that similar clients kept records substantiating expenses and typically retained invoices of sales. He admitted that he had not spoken with Juzwiak and therefore could not say whether additional information from Juzwiak would cure the defects in the records. Gillette finally commented that in his accounting career, he had never seen such an extensive lack of records.

Testimony at trial also revealed that prior to running his own trucking business, Juzwiak was a manager for five years of an International Harvester dealership, which had ten employees including a full-time bookkeeper. He was also co-owner of a business that sold and installed farm equipment. He kept the books for this business for about one year before reassigning the task to another employee. Immediately after finishing high

school and one year of technical training, Juzwiak briefly worked as a bookkeeper in a farm equipment business, but was transferred to the parts department because he could not handle the position.

Following trial, the bankruptcy court granted Juzwiak a discharge of his debts, finding there were sufficient records under § 727(a)(3). Important to the court's decision was its conclusion that a reconstruction of Juzwiak's business transactions could be accomplished if the creditors hired an accountant to sit down with Juzwiak, whom the court believed could orally identify the sources of most of the checks. The bankruptcy court also emphasized that there was no evidence that Juzwiak destroyed or concealed any records, which the court determined was the "main thrust" of § 727(a)(3). On appeal, the district court reversed the bankruptcy court's decision, determining that the bankruptcy court's decision was based upon a "misconception of the law." The district court therefore denied Juzwiak's discharge.

## II.

■■■ Juzwiak argues on appeal that the district court erred in finding his records were not sufficient to allow a discharge. We review a bankruptcy court's factual findings for clear error, while we review *de novo* the bankruptcy and district court's conclusions of law. *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992).[1]

■■■ Section 727(a) of the Bankruptcy Code provides that a Chapter 7 debtor is entitled to a discharge unless one of eight specified conditions is met. Consistent with

the "fresh start" policy underlying the Code, these exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. *See In re Pimpinella*, 133 B.R. 694, 697 (Bankr. E.D.N.Y.1991); *In re Frommann*, 153 B.R. 113, 116 (Bankr.E.D.N.Y.1993); *In re Rusnak*, 110 B.R. 771, 776 (Bankr.W.D.Pa.1990). It is also important, however, to recognize that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor. *In re Frommann*, 153 B.R. at 116; *In re Pimpinella*, 133 B.R. at 697; *In re Morando*, 116 B.R. 14, 15 (Bankr.D.Mass.1990). Under 11 U.S.C. § 727(a)(3), the court shall grant a discharge, unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

■■■ Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill. 1992); *In re Kearns*, 149 B.R. 189, 190–91 (Bankr.D.Kan.1992); *see also Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992); *In re Cox*, 904 F.2d 1399, 1402 (9th Cir.1990). The provision ensures that trustees and creditors will receive sufficient infor-

---

**1.** As an initial matter, Juzwiak argues that the district court erred in considering the discrepancy between the sales income reported on his 1993 tax return and the income deposited into the business checking account during the same time frame. He argues that the discrepancy was not raised in the bankruptcy court and therefore the issue was waived by Cargill and should not factor into review. Generally, it is true that an argument will not be considered on appeal if it was not presented to the trial court. *See Teumer v. General Motors Corp.*, 34 F.3d 542, 545–46 (7th Cir.1994). In this case, though, we are inclined to agree with the district court that the discrepancy is merely tangible evidence of an argument

pursued by Cargill at all levels of review—that Juzwiak's records were inadequate. And in light of this evidence, which was in the record before the bankruptcy court—though it was not highlighted—the bankruptcy court's factual finding that all grain sale proceeds were deposited into the checking account could be considered clearly erroneous. Therefore the district court's modification of that determination does not appear problematic. In the end, however, we need not actually decide whether the discrepancy should be considered, as we agree with the district court that regardless of any discrepancy, Juzwiak's records are inadequate under § 727(a)(3).

mation to enable them to "trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Martin,* 141 B.R. at 995; *see also In re Shapiro,* 59 B.R. 844, 848 (Bankr.E.D.N.Y.1986); *In re Pimpinella,* 133 B.R. at 697; *In re Frommann,* 153 B.R. at 116. Records need not be kept in any special manner, nor is there any rigid standard of perfection in record-keeping mandated by § 727(a)(3). *Meridian Bank,* 958 F.2d at 1230; *In re Underhill,* 82 F.2d 258, 259–60 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *In re Zell,* 108 B.R. 615, 627 (Bankr.S.D.Ohio 1989); *In re Schultz,* 71 B.R. 711, 717 (Bankr.E.D.Pa.1987); *In re Graham,* 111 B.R. 801 (Bankr.E.D.Ark.1990). On the other hand, courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs. *In re Frommann,* 153 B.R. at 117; *In re Pimpinella,* 133 B.R. at 698; *In re Shapiro,* 59 B.R. at 848.

■ Under the principles set forth above, we find that Juzwiak's records do not satisfy his burden to keep and preserve records under § 727(a)(3). The records furnished by Juzwiak—checking account ledgers, canceled checks, bank statements, and a 1993 income tax return—do not enable Cargill to reconstruct Juzwiak's grain sale transactions or to track his financial dealings for any period of time with any degree of completeness or accuracy. *See In re Pimpinella,* 133 B.R. at 697; *In re Martin,* 141 B.R. at 995. Primarily, this is because the deposit slips and other checking account records do not disclose the source of the funds deposited and additionally because there is no substantiation of expenses. The bankruptcy court found that the source of deposits was not recorded or determinable from the records disclosed. Without invoices detailing how much grain was sold to whom for how much and where the grain came from, Cargill was left to speculate as to what happened to the grain it sold to Juzwiak, as well as to the nature and composition of Juzwiak's other grain sale transactions. This is not acceptable under § 727(a)(3). Additionally, Cargill was hindered in verifying and tracing Juzwiak's disbursement of funds, since there was no documentation substantiating or explaining his expenses and no payroll records. This process was further complicated because Juzwiak occasionally paid personal expenses out of the business account. Although Juzwiak did furnish a lot of paper to Cargill and the court, the disorder and nature of the records did not allow meaningful reconstruction of Juzwiak's business transactions. *In re Frommann,* 153 B.R. at 118; *see also In re Pimpinella,* 133 B.R. at 699.

Many courts faced with checking account records, canceled checks, deposit slips, bank statements, and tax returns as the sole documentation of a debtor's financial history and condition have determined that such records are inadequate under § 727(a)(3). *See, e.g., In re Frommann,* 153 B.R. at 117–18 (carton of bills, checks, bank statements, closing statements and tax returns insufficient to determine debtor's financial condition); *Vetri v. Meadowbrook Mall Company,* 174 B.R. 143, 146 (M.D.Fla.1994) (bank statements, canceled checks and deposit slips not identifying source of funds inadequate); *In re Pimpinella,* 133 B.R. at 696–698; *In re Schultz,* 71 B.R. at 717; *In re Morando,* 116 B.R. at 15; *In re Shapiro,* 59 B.R. at 848; *In re Vandewoestyne,* 174 B.R. 518, 522–23 (Bankr.C.D.Ill.1994). We recognize that in some situations (such as where there is no business activity involved or the number of transactions is extremely limited) the type of records submitted by Juzwiak may be sufficient to enable creditors to trace financial transactions and evaluate the debtor's financial condition. *See, e.g., In re Becker,* 74 B.R. 233, 236–37 (Bankr.E.D.Tenn.1987) (bank statements and canceled checks in addition to detailed spreadsheets prepared by accountant sufficient). The instant case, however, clearly does not involve such a situation. Juzwiak ran a business enterprise engaged in a steady stream of large scale transactions involving substantial sums of money.

The bankruptcy court determined that Juzwiak's records were sufficient under § 727(a)(3). This conclusion was based on the court's finding that Juzwiak's financial transactions could be constructed from the

records submitted if the creditors hired an accountant to go over the records with Juzwiak. The bankruptcy court stated:

> The deposit slips don't generally show the source of funds. But Mr. Juzwiak later testified that he would be able to go through the records and identify various checks and so on.... So I feel that pretty much all of those deposits probably could have been identified if a creditor went or a trustee went to the length of hiring an accountant to make an actual reconstruction or compilation.

The bankruptcy court essentially found that substantial records were available and that a financial history could be constructed if Cargill had an accountant organize the documents and speak to Juzwiak to obtain any missing information. We do not find this factual finding to be clearly erroneous; rather, we agree with the district court that the legal conclusion drawn from this finding, i.e., that § 727(a)(3) is satisfied, is based on several misconceptions of the law.

■ First, the burden is not on the creditor to organize and reconstruct the debtor's business affairs. *See Frommann*, 153 B.R. at 117–18; *In re Pimpinella*, 133 B.R. at 698; *In re Morando*, 116 B.R. at 16; *In re Shapiro*, 59 B.R. at 848. The debtor has the duty to maintain and retain comprehensible records. *In re Frommann*, 153 B.R. at 118; *In re Vandewoestyne*, 174 B.R. at 522. Creditors are not required "to sift through documents and attempt to reconstruct the flow of the debtor's assets." *In re Frommann*, 153 B.R. at 118; *In re Pimpinella*, 133 B.R. at 699; *see also In re Morando*, 116 B.R. at 16; *In re Hughes*, 873 F.2d 262, 264 (11th Cir. 1989). As we stated in another context, in referencing § 727(a)(3):

> "Creditors should not be forced to undertake an independent investigation of a debtor's affairs; rather they have a right

to be 'supplied with dependable information on which they can rely in tracing a debtor's financial history.' Section 727 makes complete financial disclosure a 'condition precedent' to the privilege of discharge...."

*United States v. Ellis*, 50 F.3d 419, 425 (7th Cir.) (internal citations omitted), *cert. denied*, — U.S. ——, 116 S.Ct. 143, 133 L.Ed.2d 89 (1995). Therefore, the bankruptcy court erred in holding § 727(a)(3) was satisfied because Cargill could have organized Juzwiak's records, hired an accountant, and interviewed Juzwiak or obtained missing information from Juzwiak's customers.[2]

■ In addition, the bankruptcy court erred in requiring Cargill to rely on Juzwiak's unsubstantiated oral testimony regarding the source of the funds deposited and the details of certain disbursements. Cargill was entitled to written documentation of these important pieces of information. *See In re Rusnak* 110 B.R. at 776; *In re Pimpinella*, 133 B.R. at 698; *In re Schultz*, 71 B.R. at 716; *In re Shapiro*, 59 B.R. at 848 ("the trustee and creditors are therefore not required to take the debtor's word as to his financial situation"); *In re Kearns*, 149 B.R. at 191. Oral testimony is not a valid substitute or supplement for concrete written records. As the court in *In re Rusnak* explained:

> It is not enough that Debtor merely recite from records ostensibly "kept in his head" and detail from memory what transactions he engaged in and how the funds were dissipated. Records of substantial completeness and accuracy are necessary *in order that they may be checked against Debtor's oral statements*. Creditors, in other words, are not required to rely on a debtor's oral representations concerning these matters without also having some

---

**2.** Juzwiak argues that if we affirm the district court's decision and deny Juzwiak a discharge, "just about every small business" and unsophisticated businessperson would be precluded from obtaining a discharge because they cannot afford to hire a bookkeeper or an accountant. However, our decision today simply requires businesses to maintain adequate invoices of sales along with documentation substantiating business expenses.

This does not require an accountant or a bookkeeper. The debtor must merely keep the primary documents disclosing his business transactions. Both expert accountants testified that even their small clients typically keep such records, and that, in fact, the IRS requires such documentation. Thus, Juzwiak's argument does not give us pause.

independent means of substantiating such representations.

110 B.R. at 776 (emphasis in original) (internal citations omitted). Juzwiak was not entitled to substitute oral testimony for the written documentation that was missing from his records.

■ Finally, the bankruptcy court's decision seemed heavily influenced by the fact that there was no evidence that Juzwiak had concealed or destroyed any records. The court found the destruction or concealment of existing records was the "main thrust of § 727(a)(3)" and noted several times that there did not appear to be any showing of an attempt to conceal records. Although the ultimate goal of § 727(a)(3) is to distinguish between the honest debtor, who should be granted the privilege of discharge, and the abusive or unworthy debtor, who does not deserve such a benefit, *see In re Rusnak,* 110 B.R. at 775; *In re Pimpinella,* 133 B.R. at 697; *In re Martin,* 141 B.R. at 995, creditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation. *In re Martin,* 141 B.R. at 995; *In re Kearns,* 149 B.R. at 191; *In re Pimpinella,* 133 B.R. at 697 ("Intent to conceal information is not necessary to support a denial of discharge under 727(a)(3)"); *In re Morando,* 116 B.R. at 16; *In re Frommann,* 153 B.R. at 116. Therefore, we conclude that the bankruptcy court erred as a matter of law in finding Juzwiak's records adequate under § 727(a)(3). We find the records insufficient to disclose Juzwiak's financial transactions, and since Juzwiak has offered no justification for this insufficiency, we conclude that he is not entitled to a discharge. We thus AFFIRM the decision of the district court.