**In re John T. & Mary L. CONNORS, Debtors,**

**Union Planters Bank, N.A., Plaintiff/Respondent.**

**No. 01–CV–0010–MJR.**

United States District Court, S.D. Illinois.

June 28, 2001.

tion and reimbursement awarded under section 330(a)."

Donald M. Samson, Attorney at Law, Belleville, IL, for John T. Connors and Mary L. Connors.

Myron A. Hanna, The Stolar Partnership, Belleville, IL, for Union Planters Bank, NA.

Laura K. Grandy, Mathis, Marifian, Belleville, IL, pro se.

### MEMORANDUM AND ORDER

REAGAN, District Judge.

Before this Court is an appeal from an October 5, 2000 Order entered by United

States Bankruptcy Judge Gerald D. Fines which denied Appellants/Debtors' application for discharge of debt because they failed to keep and preserve adequate financial records from which creditors could ascertain their financial condition in violation of 11 U.S.C. § 727(a)(3). Although Appellants/Debtors, John T. Connors and Mary L. Connors ("the Connors"), dispute Judge Fines' interpretation of certain facts as discussed *infra*, the following facts are undisputed.

## I. *Background*

From November 1994 through December 1995, the Connors borrowed approximately $28,239,000 from predecessor in interest to Union Planters Bank, N.A. ("Union Planters"). The Connors obtained the money through a line of credit secured by Mr. Connors' 2.5 million shares of stock in the Argosy Gaming Company, an entity which owns the Alton Belle Casino in Alton, Illinois. In November 1994, the stock was worth approximately $36.75 per share, which provided more than ample collateral to fully secure the Connors' line of credit.

Because the line of credit was adequately secured by the stock, Union Planters did not inquire for what purpose the money was being used. The Connors testified, however, that they used the Union Planters funds, as well as funds from other sources, to build their $4,000,000 home and a $10,000,000 state-of-the-art tennis club, and to purchase casinos in Nevada and Colorado. Unfortunately for the Connors, however, the tennis club and casinos struggled from the beginning and proved to be substantial cash drains. This required the Connors to engage in continual borrowing from Union Planters and other financial and private lenders, as well as continual shifting of funds back and forth between the tennis club and the casinos in an effort to keep them afloat. All such transactions were apparently accomplished through checking accounts at Union Planters and other local banks.

By early 1997, the value of the Argosy stock had fallen drastically. As a result, Union Planters sought and was granted lien rights in nearly all of the Connors' property, both real and personal. When the Connors' financial situation did not improve, Union Planters made a demand in April, 1997 for repayment of all the outstanding loans. When the Connors were unable to repay the loans, Union Planters sold the Argosy stock and foreclosed upon their residence and the tennis club.

On July 30, 1999, the Connors filed for relief under Chapter 7 of the Bankruptcy Code, listing aggregate debts in excess of $19 million. Among the many creditors scheduled in the Connors' bankruptcy proceeding was Union Planters, named as a creditor to the tune of $12 million. Pursuant to its right under FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 and leave given by Judge Fines, Union Planters deposed the Connors on January 20, 2000. Although they had been directed to produce all relevant documentation concerning their business transactions and financial affairs, the Connors appeared for their deposition with virtually no records at all. When questioned about what records they had and their general record-keeping practices, Mr. Connors stated: "I really don't keep paperwork, then I don't lose it," and Mrs. Connors related that certain records had been thrown out in the trash when they moved from their former residence in October 1999.

Based upon the Connors' admissions that they failed to keep financial records and that some had been thrown away shortly after they filed for bankruptcy relief, as well as Union Planters' belief that it did not have adequate recorded informa-

tion on which to determine the Connors' financial condition and their business transactions prior to the filing of their application, Union Planters filed a complaint objecting to the discharge of the Connors' debt and requesting that the Connors' application for bankruptcy relief be denied under 11 U.S.C. § 727(a)(3).

The matter was tried before Judge Fines on September 25, 2000. On October 5, 2000, Judge Fines issued an eleven-page Opinion which found that although the Connors had provided some financial records and documentation in support of their application for bankruptcy, those records were wholly inadequate to allow their creditors to ascertain their financial condition and to satisfactorily explain their financial transactions dating back to a reasonable period in the past. Based upon this finding, Judge Fines sustained Union Planters' objection and denied the Connors' application for bankruptcy relief pursuant to 11 U.S.C. § 727(a)(3).

On November 20, 2000, Judge Fines denied the Connors' motion for new trial or, in the alternative, motion to reconsider. This appeal followed.

On May 30, 2001, this Court held oral argument during which Connors sought to admit Debtors Exhibit 2, which purported to be a "Summary of Deposits to John Connors West Pointe Bank account number 26326501—Excerpts from Trial Exhibit 46." This Court permitted admission of the exhibit, citing Federal Rule of Evidence 1006 which encourages summaries of voluminous documents. Because the use of the document at the appellate stage may have surprised Union Planters, the Court granted Union Planters seven days to respond to the contents of the summary, Exhibit 2. In a timely fashion, Union Planters filed an objection to Exhibit 2 (Doc. 18), claiming it should not have been admitted *after* the bankruptcy trial. The Court **OVERRULES** the objection (Doc. 18), because it merely consists of a summary and does not contain any new evidence not available to the bankruptcy court.

## II. *Standard of Review*

This Court has jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. § 158(a). Accordingly, this Court may affirm, modify, or reverse the bankruptcy judge's judgment, order, or decree or it may remand with instructions for further proceedings, FEDERAL RULE OF BANKRUPTCY PROCEDURE 8013, in accord with the following standards.

When reviewing the opinion of the bankruptcy court on appeal, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013; *see In re Krueger,* 192 F.3d 733, 737 (7th Cir.1999). A finding is clearly erroneous when the reviewing court, having considered the entire body of evidence, is left with the definite and firm conviction that a mistake has been committed. *Shaw v. Prentice Hall Comp. Pub., Inc.,* 151 F.3d 640, 642 (7th Cir.1998). Where questions of law are concerned, however, the district court will review the bankruptcy court's ruling *de novo. In re Krueger,* 192 F.3d at 737.

## III. *Analysis*

The Connors raise the following nine points on appeal.

(1) The Bankruptcy Court erred in denying Debtors' Motion for New Trial or, in the alternative, for reconsideration.

(2) The Order entered by the Bankruptcy Court on 10/5/00 denying the discharge of Debtors John & Mary

Connors was against the weight of the evidence.

(3) The Bankruptcy Court erred in its application of the standards set forth in *In re Juzwiak*, 89 F.3d 424 (7th Cir.1996) and *In re Scott*, 172 F.3d 959 (7th Cir.1999).

(4) The Bankruptcy Court erred in failing to give proper weight to the testimony of Ken Hayden, General Manager at Kings Point Racquet & Health Club, and failing to give proper weight to the documents from the records at Kings Point.

(5) The Bankruptcy Court erred in failing to give proper weight to the documentary evidence produced by Debtors.

(6) The Bankruptcy Court erred in finding that the records produced were not sufficient to ascertain Debtors' financial condition.

(7) The Bankruptcy Court erred in finding that there were no records to account for significant sums borrowed from individuals.

(8) The Bankruptcy Court erred in finding that there were no records to account for borrowing from financial institutions other than Union Planters Bank.

(9) The Bankruptcy Court erred in failing to weigh the equities in the case and did not properly exercise its discretion.

In every point, other than points three and nine, the Connors present the same basic argument[1]—that Judge Fines erred in finding that they had not provided adequate records from which their financial condition and business transactions could

be ascertained. Because Judge Fines' finding is not "clearly erroneous," this Court disagrees.

■ One of the central aims of our bankruptcy system is to give honest debtors a "fresh start" by relieving them of debts incurred prior to filing for bankruptcy relief. *In re Scott*, 172 F.3d 959, 966 (7th Cir.1999) *citing Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is important to recognize, however, that a discharge in bankruptcy is a privilege, not a right and should only inure to the benefit of the honest debtor. *In re Juzwiak*, 89 F.3d at 427. Accordingly, the privilege of discharge is necessarily dependent on a true presentation of the debtor's financial affairs. *In re Scott*, 172 F.3d at 969.

■ The particular exception to the privilege of discharge at issue in this case is codified under 11 U.S.C. § 727(a)(3). Section § 727(a)(3) provides that the Court shall deny discharge if

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). In other words, 11 U.S.C. § 727(a)(3) requires *as a precondition to discharge* that the debtor produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness

---

1. In their brief, the Connors address the first three points together. However, they present no argument in support of the first point raised. Therefore, this Court cannot determine in what way the Connors believe Judge Fines erred in denying their motion for new trial or, in the alternative, motion to reconsider. Accordingly, the Court finds this point abandoned.

and accuracy for a reasonable period past to present." *In re Juzwiak*, 89 F.3d at 427.

■ Because courts and creditors should not be forced to undertake an independent investigation of the debtor's affairs, speculate as to the financial history or condition of the debtor, or sift through documents in order to attempt to reconstruct the flow of the debtor's assets, they have a right to be supplied with dependable information on which they can rely in tracing a debtor's financial history. *Id.* at 429. Therefore, the debtor's duty under 11 U.S.C. § 727(a)(3) does not merely require that the debtor turn over any records he has. *In re Scott*, 172 F.3d at 969. Rather, this language places *an affirmative duty* on the debtor to create books and records which accurately document the debtor's business affairs. *Id.* "In the absence of § 727(a)(3), debtors without proper books and records could obtain a discharge while frustrating the trustee's ability to liquidate pre-petition assets to satisfy pre-petition debts." *Id.*

■ This strict prerequisite, however, does not dictate how the debtor's financial records are to be kept. *In re Juzwiak*, 89 F.3d at 428. There is certainly no requirement that an accountant or bookkeeper prepare the records. *Id.* at 429 n. 2. Rather, the debtor merely must keep the primary documents that disclose his business transactions which are required ordinarily by the Internal Revenue Service. *Id.*

■ Although the debtor has this affirmative duty to keep and preserve financial records, it is the creditor's burden to establish by a preponderance of the evidence that grounds under 11 U.S.C. § 727(a) exist for denial of discharge. *In re Scott*, 172 F.3d at 966–67. Consistent with this burden and with the Bankruptcy Code's "fresh start" policy, 11 U.S.C.

§ 727(a)(3) should be construed strictly against the creditor and liberally in favor of the debtor. *In re Juzwiak*, 89 F.3d at 427.

■ In the case at bar, the Connors *admitted* that they did not keep many records of their financial transactions or business affairs and that some of the records which they did have were thrown away shortly after they filed for bankruptcy relief. That alone is violative of 11 U.S.C. § 727(a)(3).

Moreover, the records the Connors have produced do not afford Union Planters the opportunity to ascertain the Connors' financial history within a reasonable time period prior to the filing of their application for bankruptcy relief. The records the Connors provided consist primarily of bank records from Union Planters and other banks. Although these records show the amount of money borrowed from the banks and the amounts of money deposited into and withdrawn from the accounts, these records do not provide Union Planters or any other creditor the opportunity to ascertain where the loan money went— whether it be to the tennis club, the casinos, the Connors themselves, or to another entity which could be liquidated to pay off the Connors' pre-petition debts.

The Connors claim they received a $500,000 loan from J.H. Berra Construction Company ("Berra"). It is an example from the Connors' record on appeal that illustrates the frustration creditor Union Planters experienced and the partial basis upon which Judge Fines concluded that:

> "...Debtors records are wholly inadequate to allow Debtors creditors to ascertain Debtors' financial condition and to satisfactorily explain their financial transactions dating back to a reasonable period in the past."

Mr. Connors testified that he had obtained a $500,000 loan from Berra which was put into escrow in connection with his Alystra casino. However, the account records do not reflect Connors' receipt of any funds from Berra. Moreover, there are no records to substantiate Connors' testimony that there was a loan of $500,000, that this amount was placed in escrow in connection with the Alystra and that $250,000 of this escrow amount was recovered by Connors and (presumably) repaid to Berra. Connors did not provide even speculative testimony as to what happened with the presumed $250,000 balance of the Berra loan proceeds. Connors attempted $288,000 payment to Berra was dishonored but Berra, surprisingly, was not listed as a creditor in the Connors' bankruptcy. Berra did sue Connors in state court for the loan. Was there a loan for $500,000 to Connors from Berra? Was it paid in part or in full? What entity loans one-half million dollars without appropriate loan documentation? At oral arguments, the Connors' counsel candidly admitted the deficiency of the Berra loan documentation:

"Again, that one, some of the details on that weren't real clear and the document documentation was not there, but there was some documentation about that loan in there."

 The Connors argue that Judge Fines should have given more weight to Mr. Connors' oral explanation regarding where the loan money was used, as well as how he and his family were able to maintain their expenses in the twelve months prior to their filing for bankruptcy relief by eating meals at the tennis club and relying on donations from friends and family. The Court disagrees. First, creditors are not required to take the debtor's word as to his financial situation, and "oral testimony is not a valid substitute or supplement for concrete written records." *Id.* at

429. As the Seventh Circuit acknowledged,

[i]t is not enough that [the] debtor merely recite from records ostensibly 'kept in his head' and detail from memory what transactions he engaged in and how the funds were dissipated. Records of substantial completeness and accuracy are necessary *in order that they may be checked against [the] debtor's oral statements.* Creditors, in other words, are not required to rely on a debtor's oral representations concerning these matters without also having some independent means of substantiating such representations.

*Id.* at 429–30, *citing In re Rusnak*, 110 B.R. 771, 776 (Bankr.W.D.Pa.1990)(emphasis in original). Second, this Court must give "due regard" to Judge Fines' finding that Mr. Connors' testimony "was simply not credible." *See* Fed. R. Bankr.P. 8013.

The Connors also argue that Judge Fines should have given more weight to the testimony of Ken Hayden, the general manager at the tennis club, and to the tennis club's records. Again, as with the bank records, the tennis club's records do not supply the court or creditors the opportunity to ascertain the Connors' full financial history. Although these records and testimony provide another "piece to the puzzle," the Connors' creditors are still left with an incomplete picture. This evidence merely shows the money coming in and out of the tennis club. It does not provide any insight regarding the Connors' two gambling casinos or any other of their business or personal financial affairs.

At oral argument and in papers filed with this Court, the Connors' counsel "explained" that Mr. Connors was a "visionary" who left the day-to-day details of his business operations to others. However, this Court finds that the "devil is in the details"—even for visionaries. The bank-

ruptcy code does not create separate record-keeping rules for visionaries vis-a-vis the rest of us. Given the large gaps in the Connors' financial history, this Court finds no clear error with Judge Fines' findings that the Connors failed to keep and preserve adequate records from which their financial condition or business transactions might be ascertained and that they had no justification for this omission under the circumstances. Accordingly, this Court rejects the Connors' second, fourth, fifth, sixth, seventh and eighth points on appeal.

This brings the Court to the Connors' third point on appeal—that the Bankruptcy Court erred in its application of the standards set forth in *In re Juzwiak,* 89 F.3d 424 (7th Cir.1996) and *In re Scott,* 172 F.3d 959 (7th Cir.1999). A closer look at their argument, however, reveals that the Connors do not contend, nor does this Court find, that Judge Fines inaccurately stated the law. The Connors merely argue that their factual situation is distinguishable from that of the debtors in *Juzwiak* and *Scott.* The Court disagrees.

In *Juzwiak,* the debtor owned a grain hauling business which he ran through a single checking account from which he also paid personal expenses. *In re Juzwiak,* 89 F.3d at 425. Juzwiak kept track of his business sales through checking account deposit slips and business expenses through canceled checks. *Id.* at 426. At the end of the year, Juzwiak would categorize his expenses and income by interpreting the deposit slips and canceled checks and summarizing the information in a notebook which he turned over to this income tax preparer. *Id.* When Juzwiak filed for personal bankruptcy protection, he produced various records but did not produce the notebook summaries. *Id.* Without this interpretation or records regarding his business, his creditors could not ascertain where the money came from,

at what price the grain was sold, what the business expenses were, and how much he paid his employees. *Id.*

In *Scott,* the debtors also filed for personal bankruptcy after investments in several businesses left them unable to repay their creditors. In reversing the bankruptcy and district court, the Seventh Circuit concluded that the manner in which the Scotts kept their personal and business records effectively concealed where investors' money went. *In re Scott,* 172 F.3d at 968. In addition, the *Scott* Court commented on the purpose of 11 U.S.C. § 727(a)(3):

> We have no doubt that the principal concern of § 727(a)(3) is debtors who destroy or hide their records. Moreover, most bankruptcies are consumer-type bankruptcies with no asserts or business affairs to speak of, and therefore, do not implicate § 727(a)(3). But where [the] debtors are sophisticated in business, and carry on a business involving significant asserts, creditors have an expectation of greater and better record keeping.

*Id.* at 970, *citing Juzwiak,* 89 F.3d at 428. Because the *Scott* Court found that the debtors directly controlled both the flow of funds and the investment decisions among the business entities, they should be held to a higher level of scrutiny than the ordinary debtor. *Id.*

As discussed above in greater detail, the Court finds the Connors' situation very similar to that of *Juzwiak* and *Scott.* As in *Juzwiak* and *Scott,* the Connors were involved in complex financial business dealings, filed for personal bankruptcy, and failed to produce adequate records to explain the disposition of millions of dollars. Therefore, this Court finds no error and rejects the Connors' third point on appeal.

This leaves the Court to address the Connors' ninth point on appeal—that the

Bankruptcy Court erred in failing to weigh the equities in the case and did not properly exercise its discretion. The Connors argue that even if grounds exist to deny their application for bankruptcy relief, it is still within the sound discretion of the Court to discharge the debt. The Connors rely on *In re Anglin*, 89 B.R. 35 (Bankr. W.D.Ark.1988) and *In re Hacker*, 90 B.R. 994 (Bankr.W.D.Mo.1987), in support of this argument.

▮▮ Although this Court is not bound by these courts' decisions, the Connors correctly cite *Anglin* and *Hacker* for this proposition. Indeed, the bankruptcy court has discretion to grant a discharge of debt even if grounds for denial of discharge exist. *In re Hacker*, 90 B.R. at 997–98. Even so, the *Anglin* and *Hacker* courts did not exercise such discretion and denied those particular debtors' application for bankruptcy relief. The *Hacker* court found that although the magnitude of debt was to be considered, it is of "premier importance for the bankruptcy court to prevent abuse of the bankruptcy laws." *Id.* at 998. Since the Connors failed to keep and preserve adequate records from which their financial condition or business transactions might be ascertained, this Court finds no abuse of discretion. Accordingly, the Connors' last point is rejected.

## IV. *Conclusion*

Because each of the Connors' points on appeal has been rejected, this Court **AFFIRMS** the Order entered by U.S. Bankruptcy Judge Gerald D. Fines on October 5, 2000 which denied the Connors' application for discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(3).

**IT IS SO ORDERED.**