**In re Joseph L. PIERCE, Debtor.**

**Grau Contractors, Inc., Knauf Fiber Glass, Inc., and Union Planters Bank, N.A., Plaintiffs,**

**v.**

**Joseph L. Pierce, Defendant.**

**Bankruptcy No. 99–50944–293.**
**Adversary No. 00–4101–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

April 5, 2002.

John C. Maxwell, St. Charles, MO, for Debtor/Defendant.

Daniel D. Doyle, Dankenbring, Greiman & Osterholt, LLP, St. Louis, MO, for Plaintiffs Grau Contractors, Inc. and Knauf Fiber Glass, Inc.

Jeffery Heuer, The Stolar Partnership, St. Louis, MO, for Plaintiff Union Planters Bank, N.A.

David A. Sosne, St. Louis, MO, trustee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

Plaintiffs filed a complaint requesting the Court to deny Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5). Plaintiffs accuse Debtor of unjustifiably failing to keep records of his business transactions, failing to satisfactorily explain his loss of assets, and making false oaths in an effort to conceal transfers of property and to hide his financial condition and sources of income. Debtor moved to dismiss Plaintiffs' complaint based on Plaintiffs' alleged ex parte examination of Debtor's business records. After trial addressing Debtor's motion and Plaintiffs' complaint, the Court concludes that Debtor's motion to dismiss should be denied and that Debtor should be denied a discharge.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

On July 9, 1999, Debtor Joseph L. Pierce filed for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330. That case was subsequently dismissed. Three months later, on October 13, 1999, Pierce filed for bankruptcy relief under Chapter 11. Pierce's case was converted to a proceeding under Chapter 7 on December 6, 1999.

Plaintiffs filed this adversary proceeding on May 8, 2000 asserting that Pierce should be denied discharge under various paragraphs of 11 U.S.C. § 727. Plaintiffs filed a motion for summary judgment on July 11, 2000. Because material facts were in dispute, the motion for summary judgment was denied. On December 10, 2001, Pierce filed a motion to dismiss Plaintiffs' complaint. On December 18, 2001, the Court held a trial addressing Pierce's motion to dismiss and Plaintiffs' complaint to deny Pierce a discharge. The matter was taken under submission.

## FINDINGS OF FACT

The following facts were established from documents in the record, from witnesses' testimony and from documents admitted into evidence at the trial of this matter:

1. Joseph Pierce owned and operated several construction and insulation businesses from 1995 through 1999 including: (i) JoTom Corporation, d/b/a First Capital Insulation; (ii) ISC, Inc., d/b/a Insulation Services and as Pierce Contractors; and (iii) Joseph L. Pierce Management Group, d/b/a PMG, Inc.

2. Debtor Joseph L. Pierce filed the present bankruptcy petition on October 13, 1999, under Chapter 11. Pierce's case was converted to a proceeding under Chapter 7 on December 6, 1999.

3. Plaintiff Union Planters Bank N.A. ("Planters") is a creditor of Pierce. Plant-

ers is a bank which made loans to Pierce and his businesses. As of the filing of the bankruptcy, Pierce owed Planters money on six outstanding loans, the outstanding balance of which is approximately $250,000.00.

4. One of Planter's loans was secured by a deed of trust on business property owned by Pierce at 3991 Elm Point Road in St. Charles County, Missouri. Pierce operated his several businesses from this location. Pierce claimed that all of his business records were kept at this location.

5. Pierce defaulted on the loan secured by the Elm Point property. On October 20, 1999, Planters held a foreclosure sale and the property was sold to a subsidiary of Planters.

6. On November 3, 1999, Wayne Tullock, the owner of St. Charles Moving and Storage, began to clear all of Pierce's property out of the Elm Point property. Tullock removed Pierce's property from inside the building as well as a trailer and derelict trucks from outside of the building. It took Tullock several days to remove all of Pierce's property. The property from inside the building was placed in a trailer and removed to Tullock's place of business. It remained stored in the trailer for over two years.

7. Eva Janell Vogler worked for Pierce for seventeen years. She worked as a "coordinator." Her job entailed scheduling jobs, bidding jobs, and inputting financial information into a computer in support of the bookkeeping of Pierce's businesses.

8. Vogler hired Tullock to remove Peirce's personal property from the Elm Point property.

9. Plaintiff Grau Contractors, Inc. ("Grau") is a creditor of Pierce. Grau was the holder of a promissory note executed by Pierce on March 1, 1995. Pierce defaulted on the note. On September 10, 1997, Grau sued Peirce in the Circuit Court of St. Charles County, Missouri. On May 15, 1998, the Circuit Court entered a judgment for Grau on the note in the amount of $170,985.76. As of the filing of this bankruptcy, Grau's judgment has not been satisfied.

10. Plaintiff Knauf Fiber Glass, Inc. ("Knauf") is a creditor of Pierce. Knauf holds an unsecured trade claim in excess of $1.2 million against Pierce and his businesses arising from the sale of insulation materials on open credit.

11. Plaintiffs' Complaint alleges four grounds to deny Pierce a discharge: (i) Pierce's unjustifiable failure to keep records of his business transactions; (ii) Pierce's failure to satisfactorily explain his loss of assets; (iii) Pierce's making false oaths in connection with the case and; (iv) Pierce's transfer or concealment of property in an attempt to hinder creditors.

### DISCUSSION

Debtor Pierce owned and operated construction and insulation businesses under various names prior to filing his bankruptcy petition. Plaintiffs in this proceeding are three creditors of Pierce.

Of the four grounds Plaintiffs have made in opposition to Pierce's discharge, Plaintiffs prosecuted only two of the grounds at trial. Those two grounds are: (i) Pierce has concealed his prepetition personal and business financial records or he has failed to keep financial records from which his financial condition or business transactions may be ascertained and, therefore, a discharge should be denied under 11 U.S.C. § 727(a)(3), and; (ii) Pierce his failed to account for the loss of his business assets in the two years prior to his bankruptcy filing and, therefore, a discharge should be denied under 11 U.S.C. § 727(a)(5).

*Concealment of or failure to keep financial records from which debtor's financial condition or business transactions may be ascertained*

As a precondition to receive a discharge, 11 U.S.C. § 727(a)(3)[1] requires a debtor to produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period leading up to the bankruptcy filing. *In the Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996)(quotations and citations omitted). Section 727(a)(3) ensures that the trustee and creditors receive enough information to trace the debtor's financial history and to reconstruct his financial transactions. *Id.* at 428. While there is not a rigid standard as to how records are kept, sufficient information needs to be provided by the debtor so that the court and creditors are not required to speculate on the financial history or condition of the debtor. *Id.* Under section 727(a)(3), the debtor is required to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate. *In re Wolfe*, 232 B.R. 741, 745 (8th Cir. BAP 1999)(quotation and citation omitted).

In the present case, the evidence indicates that Pierce is either concealing his personal and business financial records or has failed to keep them. In arriving at this finding and after considering all of the Debtor's testimony, I find that in general he is not a credible witness. In an effort to ascertain Pierce's financial condition, Plaintiffs deposed him on December 14, 1999, and inquired about his business and personal financial records from 1997 until he filed his bankruptcy petition in 1999. In his deposition, Pierce stated those records were kept on his office computer but that its hard drive had crashed in the Spring of 1999 and was not repairable. (Pierce's Dep. at pp. 20–21) He stated that he was not sure what happened to the hard drive, he may have thrown it away or it may have been removed from his Elm Point office by persons unknown. (Pierce's Dep. at pp. 34–38) It has been missing since late Spring 1999. Pierce testified that his financial condition could be recreated from invoices and other paper records kept at the Elm Point office. Pierce stated that he had been unable to reconstruct his financial condition because the records were removed along with all of his other property at the Elm Point office by Wayne Tullock to the St. Charles Moving and Storage facility in St. Charles, Missouri. In his deposition, Pierce stated that back-up diskettes of his computer were at his office and he surmises that they were also moved to storage. In his verified response to Plaintiffs' motion for summary judgment, Pierce alleged that Plaintiff Union Planters Bank, N.A. hired Tullock to remove and store Pierce's property. He also asserted that Tullock would not allow the retrieval of those records until the accrued removal and storage fees had been paid.

On December 23, 1999, after taking Pierce's deposition, Plaintiffs issued a subpoena to Tullock to allow an inspection of Pierce's property held in storage. On January 3, 2000, Plaintiffs' representatives, including paralegal Tina Simons, inspected Pierce's documents held in storage. At

---

1. Section 727(a)(3) states that: "(a) The court shall grant the debtor a discharge, unless ... (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ... "

trial, Simons testified that a copy of the subpoena was sent to the trustee and to Pierce at the address he had provided at his deposition on December 14, 1999. She testified that there were no financial records in storage from which Pierce's financial condition could be reconstructed. Simons stated that a thorough search of the stored documents did not uncover any tax returns, profit-loss statements, accounts receivable or payable records, payroll records, checking account information, or the back up disks from Pierce's computer. She also testified that they did not remove any of Pierce's property from the storage facility.

At trial, Tullock contradicted Pierce's deposition testimony that Planters had authorized the removal and storage of Pierce's property. Tullock testified that Pierce's employee, Eva Janell Vogler, and not Planters, was the party who hired him to remove all of Pierce's property from the Elm Point office into storage.

Planter's Senior Vice President Robert L. Korte testified that the locks on the doors at the Elm Point property were changed a few days after the property was sold in foreclosure. He stated that he had told Pierce he would allow someone to remove Pierce's property from the premises. Tullock contacted Korte and told him that Pierce had hired him to remove Pierce's property to storage. Korte gave Tullock the keys to the Elm Point building and Tullock removed all of Pierce's property from inside and outside of the building. Korte testified that Planters did not hire Tullock to remove Pierce's property.

Pierce's employee, Eva Janell Vogler, testified at the trial that she hired Tullock but only to remove the trailer and derelict trucks that were parked outside of the Elm Point property. She stated that she never told Tullock to remove the contents of the building. She also stated that

Pierce kept back-up disks of all the financial information on his office computer. She testified that he kept those disks with him at all times. Vogler also stated that she packed up Pierce's financial records including accounts receivable and payable and payroll records in bankers boxes but does not know what happened to them. She stopped working for Pierce in June 1999 approximately four months before the Elm Point property was sold in foreclosure. Vogler testified that Pierce never told her that an office computer had stopped working or that it had been missing from the office.

Wayne Tullock testified that the first time he ever met with Pierce, after moving Pierce's property to storage, was three weeks before the hearing of this matter. Pierce did not ask Tullock for access to his financial documents, rather he asked Tullock to look for a piece to an air hammer that had been moved with Pierce's other property to storage. Tullock told Pierce that he no longer had Pierce's property. After not being paid for two years for the removal and storage of the property, Tullock had taken it to the dump.

Tullock testified that neither Pierce nor his attorney ever contacted him to inspect the financial records that had allegedly been moved into storage from the Elm Point property along with Pierce's other property. On cross examination, Pierce's counsel asked Tullock if Pierce had ever called to get access to his property but was told by Tullock access would only be granted after Pierce had paid the moving and storage bill. Tullock replied that he did not recall such a request but it would have been his policy to deny access until the bill was paid.

The Court finds that Tullock was hired by Pierce to remove the office contents of the Elm Point property. Although Vogler testified that she only hired Tullock to

remove property outside the premises, the testimony of Tullock and Korte lead the Court to conclude that Pierce intended all the contents of the building to be removed. However, even if Tullock had not been authorized to remove the property of Pierce from inside the premises, it makes little difference to the analysis of whether Pierce is concealing or failing to maintain adequate records.

Vogler testified that paper copies of Pierce's financial records were kept at the Elm Point property and that she packed them up in bankers boxes in 1999. Tullock testified the he removed and stored all of the contents of the building. Paralegal Tina Simons testified that a thorough inspection of all the property in storage failed to uncover any financial records of Pierce's operation. The Court is left to speculate that the financial records were removed from the premises before Tullock removed the rest of the property.

Pierce testified that the computer which held all of his financial information crashed and then mysteriously disappeared from his office in the late Spring of 1999. Yet, his long time employee, Vogler, who entered financial information into the computer and was employed until June 1999, testified that Pierce never told her that the computer malfunctioned or disappeared. Vogler also testified that Pierce kept back-up disks of the financial records from his computer. She testified that Pierce did not keep the disks in his office but rather kept them with him at all times. Pierce claims that he left the disks in his office and that they must have been moved by Tullock. The Court finds Pierce's account of the whereabouts of his business records is not credible.

In the two years from his deposition in December 1999, at which Plaintiffs requested his financial records, until the trial of this matter, Pierce made no effort whatsoever to obtain or reconstruct his financial records. He never contacted his banks in an effort to reconstruct his records through bank statements. Pierce testified that his computer mysteriously disappeared and the back-up disks which he always kept with him were conveniently lost in the removal of his property to storage. Tullock stated that Pierce never sought access to his records in storage. Even if the Court credits Pierce's testimony that he tried to get his records but Tullock refused to allow access until the storage bill was paid, Pierce had other remedies to obtain access to those records. Just like Plaintiffs, Pierce could have served a subpoena on Tullock to gain access to the documents held in storage. Neither Pierce nor his attorney ever issued such a subpoena.

Section 727(a)(3) places a requirement on a debtor to maintain his records unless a failure to do so is justified under all of the circumstances of the case. The Court finds that Pierce's failure to keep financial records (or his probable concealment of same) which would allow Plaintiffs to see what became of Pierce's bankruptcy estate is unjustified. Therefore, Pierce is denied a discharge under § 727(a)(3).

### Debtor has failed to satisfactorily explain his loss of assets

■ Under 11 U.S.C. § 727(a)(5)[2] a bankruptcy court shall not grant a discharge when a debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet debtor's liabilities.

---

**2.** Section 727(a)(5) of the Code states that:
(a) The court shall grant the debtor a discharge unless—

(5) the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities

Plaintiffs assert that Pierce has not been forthcoming in explaining what became of his business assets over the two years prior to his bankruptcy filing. At his deposition on December 14, 1999, Pierce had estimated that his businesses had gross revenues of $500,000 to $700,000 in 1998 and $1.2 million in 1997. (Pierce's Dep. at pp. 173–74) He declined to speculate on his gross revenues for 1999 as of the date he filed for bankruptcy relief. But he did state that he insulated approximately 170 homes in 1999 before he filed for bankruptcy protection. (Pierce's Dep. at pp. 55–56) At the trial of this matter, Pierce testified that these figures were just educated guesses and that he thinks that these figures are too high. He testified that he could not state with any accuracy what his gross revenues were because he did not have his financial records to calculate those revenues.

Pierce's largest creditors were the three plaintiffs in this case, Union Planters Bank, Grau Contractors, and Knauf Fiber Glass. Pierce testified that he bid his insulation jobs at a profit. He testified that he did not make any payments since 1997 on the approximately $250,000.00 in notes owed to Planters or on the approximately $171,000.00 owed to Grau. Nor did Pierce make payments to the IRS of payroll tax withholdings since 1997. Pierce made a "few" payments to Knauf Fiberglass but as of his filing for bankruptcy, he owed Knauf more than $1.2 million. It is clear from the evidence that Pierce was taking in substantial revenues from 1997 through the filing of his petition in 1999 but that he was not paying his largest debts.

When asked at his deposition where all the money went Pierce replied that he let his overhead get out of control. (Pierce's Dep. at pp. 63–65) At trial he testified that labor and material also ate up funds.

Pierce stated that without his financial records he cannot say with more accuracy where his revenues went from 1997 until he filed his bankruptcy petition in 1999.

A debtor's discharge may be denied if his explanation of his loss of assets is vague, indefinite and unsatisfactory. *In re Ransom*, 75 B.R. 684 (Bankr.E.D.Mo. 1987). The party objecting to the discharge has the burden of proving that a loss of assets actually occurred. The burden then shifts to the debtor to satisfactorily explain and account for the assets shown by plaintiff to be unaccounted for. *In re Chalik*, 748 F.2d 616 (11th Cir.1984).

The Court finds that Plaintiffs have carried their burden of proof in establishing that Pierce had substantial revenue from 1997 until he filed for bankruptcy. Plaintiffs also established that Pierce failed to pay his principal creditors during this time period. In response to Plaintiffs' discovery requests, Pierce failed to present any information to explain what became of his business revenue. Pierce's vague explanation that overhead, labor and materials consumed all of his business revenues is unsatisfactory. Accordingly, the Court will deny Pierce a discharge under 11 U.S.C. § 727(a)(5).

### Motion to dismiss

Pierce filed a motion to dismiss which the Court heard at the trial of this matter. The basis for the motion is Pierce's allegation that Plaintiffs conducted some ex parte discovery. The Court entered an oral order at trial denying Pierce's motion.

The central issue of the motion was Pierce's claim that he never received a copy of the subpoena served upon Wayne Tullock concerning the Plaintiffs' inspection of Pierce's property in storage. Tina Simons testified that she sent a copy of the

subpoena to Pierce. The Court finds that Simons' testimony is more credible than Pierce's. The Court concludes that Pierce had timely notice of the subpoena.

Pierce also asserted that Plaintiffs took certain records from Pierce's stored property. No evidence supported this claim. Pierce's other allegations do not merit the dismissal of Plaintiffs' complaint. For the reasons stated on the record at trial the Court affirms its denial of Pierce's motion to dismiss.

An Order consistent with this Memorandum Opinion will be entered this date.