NOT FOR PUBLICATION

FILED

DEC 02 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   EC-10-1316-JuKiD |
| MARTY WAYNE DONOHUE, | Bk. No.   09-20986 |
| Debtor. | Adv. No. 09-2241 |
| MARTY WAYNE DONOHUE, | |
| Appellant, | |
| v. | M E M O R A N D U M* |
| PETER C. BRONSON and CAROLYN P. BRONSON, | |
| Appellees. | |

Argued and Submitted on November 16, 2011
at Sacramento, California

Filed - December 2, 2011

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Bankruptcy Judge, Presiding
_____

Appearances:    Philippa Lauben, Esq. argued for Appellant Marty Wayne Donohue; Peter C. Bronson, Esq. argued for Appellee Carolyn Bronson and himself pro se.
_____

Before:  JURY, KIRSCHER, and DUNN, Bankruptcy Judges.

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellant, chapter 7[1] debtor Marty Wayne Donohue, appeals from the bankruptcy court's judgment entered in favor of appellees, Peter and Carolyn Bronson (the "Bronsons"). The judgment denied debtor his discharge under § 727(a)(3) based on his failure to keep and preserve records for his businesses and personal affairs. We AFFIRM.

## I. FACTS

Michael Donohue, debtor's father, owned and operated a construction business under the name of River City Construction ("River City") with California Contractor License Number 330020. The Bronsons hired River City to perform construction and other work on their property in Penn Valley, California, which they planned to develop as an equestrian facility. The record shows that when the Bronsons hired River City, debtor was managing the business and in the process of acquiring it from his father who was semi-retired.[2]

Mrs. Bronson first contacted debtor in 2006 to install fencing on the Bronsons' property after she saw an ad for River City in an equestrian publication called Equestrian Connection. After the fencing was installed, the Bronsons hired River City

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Debtor testified that he had a dba as River City Construction so that he could manage the bank account. Debtor also testified that he claimed all the income from the business as his own and paid his father a salary. Hr'g Tr. at 61 (July 21, 2010).

-2-

to do additional work on the property on a project-by-project basis. The projects included, among other things, the correction of an improperly assembled barn which the Bronsons had ordered as a kit, an irrigation system, a septic system, building arenas, installation of entry gates, grading, and substantial plantings for erosion control. These projects spanned two years.

For each project, River City submitted a bid proposal to the Bronsons. Change orders were also handled through the bid proposal process. With few exceptions, the proposals were not signed by the Bronsons, and none were signed by River City. The bids typically required payment in full or a substantial portion prior to delivery. Mrs. Bronson wrote the checks for those payments which eventually added up to $400,000. The bid proposals are part of the Bronsons' record on appeal.

As time went by, the Bronsons became dissatisfied with the quality of River City's work and its failure to complete work for which the Bronsons had paid in advance. The Bronsons documented the numerous deficiencies in a November 19, 2007 letter sent to debtor and his father (collectively, the "Donohues").

On February 22, 2008, River City recorded two mechanic's liens against the Bronsons' property in the sum of $59,450. This amount allegedly reflected unpaid invoices. The record reflects that neither of the Donohues could ever point to an invoice which the Bronsons had not paid.

On May 2, 2008, the Bronsons wrote to the Donohues, asserting that River City's liens were improper because they had

-3-

paid for all the work. They further maintained that the work done by River City was substandard and documented more than a hundred deficiencies in the letter. Finally, the Bronsons informed the Donohues that they would be taking legal action to expunge the liens and recover damages.

The Donohues later caused River City to unconditionally release the mechanic's liens against the Bronsons' property.

### Bankruptcy Events

On January 21, 2009, debtor filed his chapter 7 petition. Debtor's Schedule D showed creditors holding secured claims in the amount of over $2.3 million, of which $1 million was unsecured. Schedule E showed approximately $15,000 owed to the Internal Revenue Service[3] and Amended Schedule F showed unsecured claims in the amount of $426,000. Some of the secured and unsecured debts listed on debtor's schedules belonged to River City.

In his Statement of Financial Affairs, debtor listed 2007 and 2008 income from River City as $68,499 and $25,000, respectively. Debtor stated that he had no other income from employment or operation of a business during the two years immediately preceding the commencement of his case.

On April 21, 2009, the Bronsons filed an adversary proceeding against debtor, seeking damages in excess of $350,000, which included $130,000 paid to River City that debtor allegedly diverted for his own use, and $220,000 representing

---

[3] The IRS filed two proofs of claim in debtor's case for the sum of $515,000.

-4-

the cost of remediating River City's improper or illegal work on the Bronsons' property. The Bronsons also sought punitive damages.

The Bronsons alleged that these yet to be determined damages were nondischargeable debts under § 523(a)(2) and (6). The § 523(a)(2) claim was based on debtor's alleged misrepresentations made to the Bronsons in connection with River City's work on their property and the § 523(a)(6) claim was based on River City's alleged improper filing of the mechanic's liens against their property.

The complaint also sought denial of debtor's discharge under § 727(a)(2) and (3). The § 727(a)(2) claim alleged that debtor had transferred or concealed property such as motor vehicles, gold, securities, cash, jewelry and other valuable personal property with the intent to defraud his creditors. The § 727(a)(3) claim alleged that debtor had failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained.

Debtor answered the complaint by denying all allegations and asserting twelve affirmative defenses.

The bankruptcy court held a two-day trial on the matter.[4]

---

[4] On January 27, 2009, Michael Donohue filed a chapter 7 petition (Bankruptcy Case No. 09-21354). On May 4, 2009, the Bronsons filed an adversary proceeding against him (Adv. No. 09-02265), alleging claims for relief under § 523(a)(2) and (6). Although the Bronsons filed separate complaints against debtor and his father, the bankruptcy court consolidated the adversary proceedings for trial. On August 3, 2010, the bankruptcy court entered judgment for Michael Donohue and against the Bronsons. We take judicial notice of the relevant pleadings docketed and
(continued...)

On July 15, 2010, Mrs. Bronson and debtor testified. At the completion of the Bronsons' case in chief, debtor's attorney moved under Civil Rule 52(c)[5] for judgment on partial findings based on her assertion that the Bronsons had failed to meet their burden of proof on their § 727(a)(2) and (3) claims. The bankruptcy court granted the motion on the § 727(a)(2) claim, but found sufficient evidence to proceed on the § 727(a)(3) claim. On July 21, 2010, the court heard further testimony from Mrs. Bronson, debtor and other witnesses.

On August 2, 2010, the bankruptcy court placed its findings of fact and conclusions of law and order for judgment on the record. The court found that the Bronsons had not proven their claims under § 523(a)(2) or (6). On the § 727(a)(3) claim, the court found that based on the totality of exhibits in the record and debtor's testimony, it was persuaded that adequate records were not kept or preserved, particularly with respect to River City, which was debtor's responsibility. The court stated that in more than twenty years on the bench, it had never come into contact with such a weak collection of records. Based on the evidence presented, the court found debtor had no justification for his failure to keep or preserve records under the circumstances of the case.

---

[4](...continued)
imaged in Michael Donohue's underlying bankruptcy case and the adversary proceeding which were not included in the record. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[5] Civil Rule 52(c) is made applicable to bankruptcy cases by Rule 7052.

On August 3, 2010, the bankruptcy court entered judgment for the Bronsons on their § 727(a)(3) claim. Debtor filed a timely appeal.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court erred in denying debtor his discharge under § 727(a)(3).

## IV.  STANDARDS OF REVIEW

On appeal of a denial of discharge under § 727(a), we review the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and we apply de novo review to "mixed questions" of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009).

A bankruptcy court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. Retz v. Samson ((n re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V.  DISCUSSION

Section § 727(a)(3) states that a bankruptcy court shall grant the debtor a discharge, unless —

-7-

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Section 727(a)(3) is a broadly worded statute prohibiting numerous acts in relation to "any recorded information." The only qualification is that the recorded information concealed, falsified, or not kept or preserved by a debtor, must be such from which one "might" be able to ascertain the debtor's financial condition or business transactions.

The statute's purpose is to protect creditors by requiring debtors to make accurate disclosures regarding their financial affairs. Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008). As a policy matter, and consistent with the statutory construction of other exceptions to discharge, § 727(a)(3) is strictly construed against the moving party and liberally in favor of the debtor. Id.

As the parties objecting to debtor's discharge under § 727(a)(3), the Bronsons had the initial burden of proving, by a preponderance of the evidence,[6] "'(1) that the debtor failed

---

[6] See Grogan v. Garner, 498 U.S. 279, 287 (1991) (preponderance of the evidence applies to discharge exceptions). "The burden of showing something by a 'preponderance of the evidence,' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal., 508 U.S. 602, 622 (1993).

-8-

to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'" Id. Once the Bronsons met their initial burden on these elements, "'the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records.'" Id.

Debtor argues on appeal that the evidence submitted during the trial does not support the bankruptcy court's decision to deny him a discharge under § 727(a)(3). In that regard, debtor has taken a two-pronged approach: First, debtor contends that the bankruptcy court erred in denying his motion under Civil Rule 52(c) at the close of the Bronsons' case in chief on July 15, 2010.[7] Second, debtor contends that the court erred in denying his discharge after hearing all the evidence. We address each argument below.

**A.    Debtor's Civil Rule 52(c) Motion**

According to debtor, the Bronsons failed to present a prima facie case for denial of his discharge under § 727(a)(3) by the close of their case in chief on July 15, 2010.

Civil Rule 52(c) provides:

If a party has been fully heard on an issue during a

---

[7] Debtor refers to the motion as one for a directed verdict. Motions for directed verdicts are now called motions for judgment as a matter of law and are governed by Civil Rule 50. This rule applies in bankruptcy cases only if the matter is tried before a jury. See Rule 9015(c). Because the trial was a bench trial, debtor's motion for a directed verdict was a motion for a judgment on partial findings under Civil Rule 52(c). The bankruptcy court apparently treated the motion as one for judgment under Civil Rule 52(c), and we shall do the same for purposes of appeal.

-9-

> nonjury trial and the court finds against the party on that issue, the court may enter judgment against that party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence . . . .

Given the rule's use of the permissive "may," the bankruptcy court had full discretion to defer entering judgment until it had heard all the evidence. We cannot conclude in this case that the bankruptcy court abused its discretion, especially in light of our affirmance of the court's factual findings.

Moreover, it is undisputed that after the denial of debtor's motion, he proceeded to offer evidence on his own behalf at the July 21, 2010 hearing. Where a party introduces evidence on his own behalf after he has moved for relief under Rule 52(c), he waives his right to relief under Rule 52(c). See Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 32 (1st Cir. 2007). Therefore, we test the sufficiency of the evidence on appeal by reviewing the entire record. Id.; Gaffney v. Riverboat Servs., 451 F.3d 424, 451 n.29 (7th Cir. 2006).

**B.    The Bronsons' Proof Of Missing Information**

Debtor contends the bankruptcy court clearly erred by finding that he failed to keep and preserve records from which his financial condition or business transactions might be ascertained.

Under Civil Rule 52(a)(6), "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Where there are two plausible views of the

-10-

evidence, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). Moreover, findings based on determinations regarding the credibility of witnesses "demand[] even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id. at 575.

After reviewing the testimony and exhibits in the record provided to us, we find no reversible error in the bankruptcy court's fact determination. The bankruptcy court made a credibility determination regarding debtor's testimony about his records (or lack thereof) and was otherwise unconvinced by debtor's testimony that he had kept records — especially as they pertained to River City's business.

The evidence in the record shows that debtor treated River City's business and assets as his own; that debtor engaged in automotive-related businesses and commingled funds from those businesses with the funds of River City; and that debtor was unable to account for the more than $400,000 he received from the Bronsons. Most significantly, the record reveals that debtor was missing substantial categories of documents: (1) any organized documents which related to receipts or other information regarding car sales; (2) cancelled checks or other records which supported River City's income and payment of expenses; and (3) records relating to debtor's personal affairs, household expenditures or budgets.

We need not recite all the evidence (or lack thereof) which

-11-

supports the bankruptcy court's finding, but highlight the missing information with the following excerpts of debtor's unsubstantiated testimony:

• Debtor explained through his testimony that he listed and brokered a couple dozen cars and that he sometimes made a commission.  Debtor could not estimate how much he received in any given year from his "hobby."  Hr'g Tr. at 33-35 (July 21, 2010).

• When Mr. Bronson questioned debtor about his interests in a BMW, debtor testified that at one point a customer of River City wanted work done, but did not have the money to pay for it. The customer had a BMW for sale which debtor agreed to take in exchange for the work.  Debtor testified that he never owned the vehicle, but he sold the vehicle to pay his material costs and the men that worked on the job, so he didn't get the car.  Hr'g Tr. at 26-27 (July 21, 2010).  When asked if he received $9,500 for the BMW, debtor answered:  "I believe so, yeah."  Id. at 28. When asked how much he netted from the sale, debtor answered: "A few thousand dollars probably."  Id. at 33.

• Debtor testified that although he believed the Bronsons owed River City money, he could not point to an invoice showing an unpaid amount.  Debtor testified that he did not have all the bid proposals or parts of them.[8]  Debtor further testified that it was "kind of hard to tell exactly where we're at and actually really what was paid, because I don't have check numbers on all

_____

[8] Debtor contended that some of these documents were "lost" on his computer, but he never substantiated which records he thought were lost or gave any detail as to how they were lost.

-12-

of these.  So I never could really determine what was paid and what was not paid."  Hr'g Tr. at 192-93 (July 15, 2010). Finally, debtor testified that there had never been an accounting of the various invoices during the project and conceded that there may have been bid proposals that were not reflected in the documents that he maintained.  Id. at 193.

• Debtor was unable to explain how the Bronsons' advance payments for the construction of their gate were spent.  In this regard, the bankruptcy court made a factual finding that debtor had never ordered the gate that the Bronsons had paid for in advance.  Hr'g Tr. at 8 (August 2, 2010).  During the trial, Mr. Bronson asked debtor what he did with the $9,000 they paid him for their gate.  Debtor testified that he purchased part of the materials, and part of the money sat in the account.  Debtor further testified that the money was no longer in the account, simply stating that it got used over the years and that, as the times got tough, the money got spent.  Hr'g Tr. at 57 (July 21, 2010).  "I mean I don't know exactly when your money got spent." Id.

• Mr. Bronson questioned debtor about his personal financial status and living expenses; specifically, how did debtor pay $4100 in monthly rent payments when his Statement of Financial Affairs showed that his income for the year preceeding the bankruptcy filing was $25,000.  Debtor testified that the "source" of payment was "the stuff dealing with autos or River City construction money that comes in . . . .  It's all run through my bank account."  Hr'g Tr. at 162-63 (July 15, 2010).

On appeal, debtor is adamant that he had client files, bank

-13-

statements, invoices, and "everything else" for River City's business. However, besides the bid proposals, there are no bank statements or invoices in the record on appeal, and it does not appear that they were presented to the trial court. Debtor also maintains that he gave tax returns and bank statements to the trustee. The fact that debtor may have been forthcoming in producing those records to the trustee is insufficient.[9] "The terms of [§] 727(a)(3) do not condition a debtor's discharge on the presentation of the documents that he did keep and preserve." In re Caneva, 550 F.3d at 764. In any event, debtor's tax returns and bank statements are but summaries of information and incomplete unless debtor provided source materials. We found no source materials in the record on appeal.

Given the lack of documentation in the record, it is apparent in this case that the bankruptcy court's decision rested almost entirely on debtor's testimony and credibility determinations. Debtor's testimony shows that he could not confirm his commissions from car sales or how much he made from the sale of the BMW. Debtor admitted that he was missing bid proposals for the Bronsons' projects. Debtor admitted that he did not have check numbers for the Bronsons' payments so he could not determine what was paid or not paid. Finally, nothing in debtor's testimony established that his income from River City and his automotive related businesses was sufficient to pay

_____

[9] The bankruptcy court also took the view that it drew no inference from the fact that the trustee had not objected to debtor's discharge.

his personal expenses. We thus conclude that debtor's testimony provided a plausible basis for the bankruptcy court to find that debtor failed to keep or preserve records from which his financial condition and business transactions could be ascertained.

> It is not enough that Debtor merely recite from records ostensibly 'kept in his head' and detail from memory what transactions he engaged in and how the funds were dissipated. Records of substantial completeness and accuracy are necessary in order that they may be checked against Debtor's oral statements. Creditors, in other words, are not required to rely on a debtor's oral representations concerning these matters without also having some independent means of substantiating such representations.

In re Juzwiak, 89 F.3d 424, 429-30 (7th Cir. 1996).

In short, we found no documentary proof in the record for the majority of the transactions debtor describes in his testimony. Without being able to trace the financial history of debtor's various businesses, it is impossible to fully understand debtor's finances in this case. Accordingly, the bankruptcy court correctly found that the Bronsons met their burden of proof on their prima facie case.

**C. Debtor's Proof of Justification**

The bankruptcy court found that debtor's failure to keep and preserve records was not justified considering all the circumstances in the case. "'Justification for [a] bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them.'" In re Caneva, 550 F.3d at 763. This is an objective inquiry.

In considering the nature of River City's business, the

-15-

court concluded a contracting business would require documentation such as contracts. The court explained that it had not seen a single contract for construction for any of the Bronsons' projects. The court viewed debtor as running River City's business as though he were a handyman. In other words, an informal "I do the work and you pay for it" approach.

Debtor's brief on appeal misconstrues the court's comments regarding River City's use of bid proposals rather than a formal document called a "contract" for its business. The point was that River City did not have the most basic records, used by other construction businesses in like circumstances, that would have documented its business transactions with the Bronsons or other customers. Debtor's reliance on the bid proposals is misplaced when the proposals were missing crucial information, not the least of which were the signatures of the parties.

Debtor attempts to justify the lack of records for River City on the grounds that he was in the process of taking over his father's business, he had no formal training or education, he relied on the services of his CPA to manage the tax returns and his wife performed data entry. According to debtor, he did all that was necessary for a person reasonably to assume that his records were adequate and accurate.

It does not appear that debtor made these arguments in the bankruptcy court. Debtor's opening brief did not cite to any portion of the record where his training or education was discussed. In general, we do not consider an issue raised for the first time on appeal. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004). Even so, the bankruptcy court found

that as between debtor's father and debtor, it was debtor's responsibility to keep the books and records of River City based upon the circumstances surrounding their "transaction" for the transition of the business from father to son. On appeal, debtor does not contend this finding is clearly erroneous. Indeed, the record shows that debtor was essentially treating the business as his own even though a formal transfer from father to son had not taken place.

The bankruptcy court further stated, after listening carefully to the testimony of debtor's wife, Sabrina Donohue, that she was filing whatever debtor gave her to file and recording whatever debtor gave her to record. This finding, based on credibility determinations, is also one we do not disturb on appeal. Accordingly, even if debtor had preserved his arguments for purposes of this appeal, we conclude that the record supports the bankruptcy court's finding that debtor failed to prove that the lack of records was justified under the circumstances of the case.

## VI.   CONCLUSION

For the reasons stated, we AFFIRM.