**In re Richard WOLFE a/k/a R.B. Wolfe, Debtor.**

**Leslie A. Davis, Plaintiff–Appellee,**

**v.**

**Richard Wolfe, also known as R.B. Wolfe, Defendant–Appellant.**

**BAP No. 98–6106 EM.**

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted March 25, 1999.

Decided April 20, 1999.

Robert E. Eggmann, St. Louis, Missouri, for appellant.

Paul N. Rechenberg, St. Louis, Missouri, for defendant.

Before KRESSEL, WILLIAM A. HILL and SCOTT, Bankruptcy Judges.

SCOTT, Bankruptcy Judge.

## I.

The debtor appeals two orders of the United States Bankruptcy Court for the Eastern District of Missouri [1] denying his discharge and denying his motion for a new trial. The primary issue before this Court is whether the bankruptcy court erred in denying the debtor's third oral motion for continuance, made on the date of trial. We review decisions of the bankruptcy court under the clearly erroneous standard. Fed.R.Bankr.P. 8013; *In re Hopper,* 228 B.R. 216, 217 (8th Cir. BAP 1999).

## II.

The debtor filed his bankruptcy petition on February 5, 1997. The schedules reveal debts few in number, but large in amount. Indeed, two of the debts constitute 99% of the total debt: $202,000 owed to the Internal Revenue Service and a $900,000 judgment which includes punitive damages. The debtor's schedules list self-employment income, a large debt for withholding taxes, and a statement that he is "planning retirement." However, no information regarding the nature of his business is revealed by the schedules. He lists a $6,000 secured debt on a twenty-year old

---

1. The Honorable James J. Barta, Chief Judge for the United States Bankruptcy Court for the Eastern District of Missouri.

Mercedes, the lien being held by his tax return preparer. With this meager information before him, the trustee questioned the debtor at the meeting of creditors, 11 U.S.C. § 341(a),[2] on May 2, 1997, and again on May 6, 1997. The debtor provided a copy of his car title reflecting a lien, but gave no explanation as to the debt and, despite repeated requests by the trustee, the debtor produced no documents evidencing a security agreement or even a debt. The only financial records produced by the debtor were copies of his 1994 and 1995 federal income tax returns and an unsigned return for 1996, marked "draft."

Unable to obtain documents and records of the debtor, on June 24, 1997, the trustee filed a complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) based upon the debtor's failure to cooperate, turnover his Mercedes automobile, and failure to keep records from which his financial condition or transactions could be ascertained. Trial was first scheduled for a time four months after the filing of the complaint, October 22, 1997. When the matter was called for trial on that date, the debtor, through counsel, orally moved for a continuance based upon the fact that he had been hospitalized in Kentucky the day before, October 21, 1997. The request for a continuance was granted and trial rescheduled for a date two months later on December 22, 1997. In light of the serious nature of the debtor's condition,[3] the Court issued a written order granting the oral motion, and stating in pertinent part:

> Upon consideration of the record as a whole, the Court granted the Defendant's oral motion, and suggested that appropriate pretrial actions be taken so

that the rescheduled trial may go forward even if the unfortunate circumstance of unanticipated illness should occur. . . .

> [T]he parties are to immediately engage in such pretrial discovery as will provide a reasonable assurance that the trial may be completed.

*Davis v. Wolfe*, No. 97–41037–172 (Bankr. E.D.Mo. Oct. 23, 1997).

On December 22, 1997, all parties appeared for trial but debtor's counsel again orally moved for a continuance based upon the debtor's heart condition. This time, the debtor was apparently seeking treatment in Tennessee. The Court again granted the continuance expressly advising the debtor to preserve his testimony and that no more continuances would be granted. The debtor was given an additional five months to take appropriate action and prepare for trial.

On June 1, 1998, the court called the matter for trial and debtor's counsel again orally moved for a continuance based upon the debtor's ill health.[4] This time, debtor was hospitalized in Tennessee. The Court denied the debtor's motion for continuance and trial proceeded. Judgment was entered on October 20, 1998, denying the debtor's discharge pursuant to section 727(a)(3). A motion for new trial was denied on December 8, 1998. The debtor timely appealed the order denying new trial, asserting that the court erred in denying the motion for continuance and erred in denying his discharge.

### III.

It is well-settled that a motion for continuance of trial rests within the

---

**2.** The meeting was originally scheduled for April 3, 1997, but continued upon the debtor's request due to his ill health.

**3.** The debtor not only suffered from a serious heart condition, he was undergoing treatment for prostate cancer.

**4.** Counsel for debtor first made an oral motion to dismiss the case. Although noting that

notice and hearing was required under the Bankruptcy Code, 11 U.S.C.A. § 707(a), counsel indicated that she had been "instructed" to orally move for dismissal. On June 18, 1998, the debtor noticed his formal, written motion to dismiss the chapter 7 case. After hearing held on July 9, 1998, the motion to dismiss was denied. Denial of that motion was not appealed.

sound discretion of the trial court and an appellate court will reverse denials of a continuance only if the trial court committed clear error of judgment upon a weighing of the relevant factors. *See United States v. Young,* 943 F.2d 24, 25 (8th Cir. 1991); *United States v. Ware,* 890 F.2d 1008, 1010 (8th Cir.1989); *Hopper v. Hopper,* 228 B.R. 216, 217–18 (8th Cir. BAP 1999) (citing and discussing relevant Eighth Circuit case authority).

In the instant case, there is no question that the debtor's condition was serious and that the bankruptcy court understood the serious nature of debtor's medical condition. Indeed, the oral and written statements of the bankruptcy court on October 22, 1997, and December 22, 1997, indicate not only that the court understood the seriousness of debtor's condition, but that the court was sufficiently perceptive to realize that additional measures were necessary to ensure that the matter would proceed to trial. Thus, the bankruptcy court specifically and emphatically directed the debtor to preserve his testimony. There was no indication, in light of the seriousness of the debtor's condition and age, that the medical problems would diminish. Rather, the trial court perceived that without further action, the motions to continue might never cease. It was apparent to the court, and should have been apparent to the debtor, that the debtor would need to prepare his defense and preserve his testimony through the pretrial and other remedies enumerated in Part VII of the Federal Rules of Bankruptcy Procedure.[5] Since the debtor gave no indication that his health would *improve,* the court had no assurance that the he would be available to testify in the future. Under these circumstances, the bankruptcy court properly and wisely directed the debtor to take steps to preserve his testimony in the conduct of pretrial

discovery. When the debtor first failed to take any action to comply with this directive, the court generously exercised its discretion and gave the debtor a second, five-month opportunity to preserve his testimony and complete discovery. However, the court also issued an admonition that no further continuances would be granted. Thus, when the bankruptcy court called the matter for trial in June 1998, the debtor had been granted two continuances, had been warned to preserve his case, had been instructed of the consequences of not taking action and therefore had ample time and opportunity to prepare for trial.

The record reflects that the debtor's motion for a continuance was necessitated not by the debtor's medical condition, but rather, by a lack of his own of diligence. Although the debtor had been in St. Louis during the week prior to the June trial, moving from his apartment, winding up his affairs and preparing to be hospitalized, no written motion was made to the court nor any effort taken to preserve his testimony. It was not until he filed the motion for new trial that the debtor prepared anything in writing regarding his medical condition. Any prejudice to the debtor was caused by his own failure to comply with the court's order, his failure to avail himself of the remedies available under the Federal Rules of Bankruptcy Procedure, and his own lack of diligence. There is no evidence that there was any conduct by the trustee contributing to the need for a continuance. *See United States v. Bernhardt,* 642 F.2d 251, 252 (8th Cir.1981) (establishing the factors for determinations concerning continuances). In these circumstances, the trial court did not abuse its discretion in denying the debtor's third oral motion for a continuance or the motion for new trial on the basis that the continuance should have been granted.[6]

---

5. *See, e.g.,* Rules 7030, governing depositions upon oral examination, 7031, governing depositions upon written questions, and 7032, governing the use of depositions at trial.

6. Appellant also argues that a new trial should have been granted pursuant to Rule 9023, incorporating Fed.R.Civ.P. 59, on the grounds of newly discovered evidence. It also appears that the bankruptcy court con-

## IV.

The debtor also asserts that the bankruptcy court erred in denying his discharge for failure to preserve books and records from which his financial condition and transactions could be ascertained. 11 U.S.C. § 727(a)(3). Sections 727(a)(3). Sections 727(a)(3) does not contain an intent element, but, rather, imposes a standard of reasonableness. The debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *First State Bank of Newport v. Beshears (In re Beshears)*, 196 B.R. 468, 474 (Bankr.E.D.Ark.1996) (quoting *Koufman v. Sheinwald*, 83 F.2d 977 (1st Cir.1936)). *Accord Miller v. Pulos (In re Pulos)*; 168 B.R. 682, 689 (Bankr. D.Minn.1994); *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr.E.D.Ark. 1991). Once a plaintiff has made a *prima facie* case, the burden shifts to the debtor to justify why the particular record was not maintained. *Wiess*, 132 B.R. at 592.

The debtor first asserts that he had no opportunity to present the defense of justifying the lack of records. Related to this argument is the assertion that he is old and ill. For the reasons stated above, the bankruptcy court correctly found these assertions unavailing. The debtor was not only given many months and two continuances to prepare his case and preserve his testimony, he was twice expressly told to do so. Moreover, he was apparently able to wind up his affairs in St. Louis, including the physical task of moving out of his apartment in the week prior to trial, but could not, over the one-year period from service of the complaint to trial, either produce his records or prepare for trial.

The debtor also submits the alternative arguments that the bankruptcy court incorrectly concluded that his business warranted the keeping of records and that he was engaged in a business. The records before the bankruptcy court reveal otherwise and support the court's finding. Listing income from self-employment and a $200,000[7] debt to the United States for employment taxes indicate not only the existence of a business but that there should exist records of that business.[8] At the meeting of creditors, the debtor testified to performing consulting work, but provided no information as to payments for the work or even for whom he did the consulting. Further, although this matter has proceeded through investigation by the trustee, the filing of a complaint objecting to discharge, trial of the matter and full briefing and oral argument for this appeal, the debtor has even to date failed to state the nature of his business. The most that can be gleaned from the record is that debtor was "apparently" involved in the sale of "oil and gas interests" and "maybe" some cattle interests.

Under the circumstances, the record clearly supports the bankruptcy court's findings that the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) and that there was not basis to grant a new trial. The debtor failed to cooperate with the trustee, and either

---

sidered this argument. The argument is without merit because the appellant failed to proffer any new evidence. Rather, appellant merely speculated that the debtor could have offered a defense. Even at this appellate stage, he offers none.

7. In his brief, the debtor asserts that the bankruptcy court erroneously inferred that a $200,000 tax debt indicates that the debtor was operating a business. The debtor asserts that the court did not inquire as to the nature of the debt which "could have come from any number of sources." The debtor's Schedule

E, however, states that the $200,000 debt is for "941 Taxes." Form 941 is the IRS form for reporting and paying taxes required to be withheld from an employee's wages. The inference is clear and unassailable: A debt for "941 Taxes" indicates that the debtor was operating a business. Debtor's counsel also characterized the debt as "withholding tax liability" in statements to the court on June 1, 1998.

8. The schedules state that the debtor had no bank accounts on the date of the filing of the petition.

failed to keep or maintain adequate records or failed to turn them over to the trustee. Accordingly, the judgment of the bankruptcy court is affirmed.