# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 18-6006

_____

In re: Daryll Christopher Dykes; Sharon Luster Dykes

*Debtor*s

------------------------------

James L. Snyder, U.S. Trustee

*Plaintiff - Appellee*

v.

Daryll Christopher Dykes; Sharon Luster Dykes

*Defendants - Appellants*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: September 21, 2018
Filed: October 29, 2018

_____

Before SCHERMER, NAIL, and SHODEEN, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Daryll Christopher Dykes and Sharon Luster Dykes (Debtors) appeal the bankruptcy court's[1] judgment denying their discharge. We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons that follow, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court properly denied the Debtors' discharge under Bankruptcy Code § 727(a). We hold that it did.

## BACKGROUND

On July 26, 2016, the Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Debtor Daryll Dykes (Mr. Dykes) is trained as a physician and a surgeon, and holds a law degree and a Ph.D. Sharon Dykes (Mrs. Dykes)[2] is also trained as a physician and surgeon. As of the petition date, or shortly prior to that time, the Debtors were practicing medicine, either independently or through professional corporations. Mr. Dykes served as a Robert Wood Johnson Foundation Health Policy Fellow in Washington, D.C.

The Debtors' bankruptcy schedules showed debts exceeding $5 million. Schedule I lists monthly income of approximately $9,700.00 for Mr. Dykes and approximately $6,900.00 for Mrs. Dykes.

The Debtors filed their bankruptcy cases due to debts and judgments owed to creditors including judgments against the Debtors in excess of $4,146,000.00 arising from the construction of their home. The Debtors lost their home to a foreclosure in

---

[1] The Honorable Kathleen H. Sanberg, Chief United States Bankruptcy Judge for the District of Minnesota.

[2] For the sake of clarity we refer to the Debtors each as "Mr." and "Mrs.," rather than as "Dr."

2011. Mr. Dykes testified that after the Debtors' banker was convicted of mortgage fraud, including for the mortgage loan on the Debtors' home, the bank refused to restructure the Debtors' loan, and a balloon payment became due. The Debtors were not able to make the balloon payment or obtain alternate financing to avoid the foreclosure. The Debtors were forced to move out of their foreclosed home in 2012.

When the Debtors moved out of their home in 2012, they moved their personal property into three large 30-foot rented storage bins. The Debtors stopped paying the rent for storage, and with an amount owing of approximately $10,000.00, the property in the bins was forfeited and sold pre-petition. Mr. Dykes testified that the property in the storage bins was worth hundreds of thousands of dollars. There has not been an accounting for the property in the storage bins.

Because of the foreclosure of their home, Mrs. Dykes rented a house in Rosemount, Minnesota, and Mr. Dykes resided at an apartment in Minneapolis. They both moved later to a house in Minneapolis where Mrs. Dykes resided at the time of trial. At the time of trial, Mr. Dykes spent most of his time in Washington, D.C., where his fellowship was located.

Mr. Dykes testified that the Debtors' home loan ultimately led to their bankruptcy filing. After years of litigation between the bank and the Debtors, the bank obtained a judgment against the Debtors and levied the interest of Mr. Dykes in his medical practice. According to Mr. Dykes, because of this, in 2012 his income dropped from well over a million dollars a year to "essentially zero." Although Mr. Dykes began to rebuild his medical practice, events in 2014 and 2016 caused the practice to suffer.

Between November 2008 and March 2012, Mr. Dykes purchased dozens of watches from Bellusso Jewelers in Las Vegas, Nevada and ultimately accrued a debt of $390,700.00 to the jeweler. Mr. Dykes testified that after an initial period during

which he and Ezra Bekhor of Bellusso Jewelers followed a formal process for the purchase of watches, which included paperwork for each sale, the process became less formal, and the jeweler shipped to Mr. Dykes multiple watches worth tens of thousands of dollars by Federal Express without paperwork from the jeweler. Mr. Dykes testified that he would return unwanted watches to the jeweler the same way. According to Mr. Dykes, he once received a time piece worth approximately $107,000.00 without paperwork, payment, or signature, and he returned the timepiece the same way. By the end of his relationship with the jeweler, Mr. Dykes had little to no paperwork concerning many of the watches still in his possession.

According to Mr. Dykes, the watches he collected were not as valuable without their original boxes or paperwork. At trial Mr. Dykes no longer had the boxes and paperwork for watches he purchased.

The documentary evidence that was preserved showed that the Debtors took possession from the jeweler of watches ranging in cost from $4,350.00 to $107,950.00, diamond earrings, and a Kuwait platinum bridal collection ring with a 3.15 carat diamond and two side stones. The ring was valued at approximately $68,000.00.

In October 2011, Mr. Dykes executed a confession of judgment in the amount of $390,700.00 in favor of Mr. Bekhor, the jeweler. In February 2013, Mr. Dykes returned to Mr. Bekhor (by giving them to the jeweler's attorney): (1) 27 watches; and (2) the Kwait platinum diamond ring. Mr. Dykes provided a list of the watches and the diamond ring that were returned. The Debtors did not provide evidence of the value attributed to the returned items or the balance owed on the confession of judgment after these items were returned.[3] The watches on the list of returns did not

___

[3] As the bankruptcy court stated, Mr. Bekhor originally filed a proof of claim in the amount of $413,788.44, which included the amount of the confessed judgment plus accrued interest and expenses. In April 2017, Mr. Bekhor filed an amended

match the watches listed as paid for in invoices from the jeweler that were submitted at trial.

The United States Trustee for Region 12 (U.S. Trustee) filed a timely complaint objecting to the Debtors' discharge. The complaint included counts for denial of the Debtors' discharge under several subsections of Bankruptcy Code § 727, including §727(a)(3). Section 727(a)(3) was one of the bases upon which the bankruptcy court denied the Debtors' discharge.

## STANDARD OF REVIEW

We review a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 469 (B.A.P. 8th Cir. 2001) (citations omitted). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. *Home Service Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015).

## DISCUSSION

Denial of a discharge is a harsh remedy. Accordingly, the provisions under §727 of the Bankruptcy Code "are strictly construed in favor of the debtor." *See Korte,* 262 B.R. at 471 (quoting *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589–90 (Bankr. D. Minn.1987)). "Importantly, however, § 727 was also included to prevent the debtor's abuse of the Bankruptcy Code." *Id.* (citation omitted).

To prevail in an action to deny a debtor's discharge, the objecting party must prove each element under § 727 by a preponderance of the evidence. *Allred v. Vilhauer (In re Vilhauer),* 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (citation

---

proof of claim in the amount of $300,669.84. Attached to the amended proof of claim is a Writ of Execution on the confession of judgment in the amount of $413,788.44. The amended proof of claim does not indicate why the claim was being amended to a lower amount.

omitted); FED. R. BANK. P. 4005.  "[T]he grounds stated under § 727(a) are phrased disjunctively, and only one ground needs to be proved in order for a debtor to be denied a discharge." *Vucurevich v. Valley Exchange Bank*, No. CIV. 14-4114-KES, 2015 WL 632126, at *6 (D. S.D. Feb. 13, 2015).  Because we hold that the U.S. Trustee met his burden under § 727(a)(3), we do not explore the bankruptcy court's rulings under other parts of § 727.

Bankruptcy Code § 727(a)(3) states that:

(a) The court shall grant the debtor a discharge, unless--
. . .
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . .

11 U.S.C. § 727(a)(3).

Once the party seeking to deny a debtor's discharge under § 727(a)(3) "has shown that the debtor's records are inadequate, the burden of production shifts to the debtor to offer a justification for his record keeping (or lack thereof); however, the objecting party bears the ultimate burden of proof with respect to all elements of this claim." *McDermott v. Swanson (In re Swanson)*, 476 B.R. 236, 240 (B.A.P. 8th Cir. 2012).  "[I]n order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).

Section 727(a)(3) does not require proof of intent.  *Floret, L.L.C. v. Sendesky (In re Sendesky)*, 283 B.R. 760, 764 (B.A.P. 8th Cir. 2002).  The standard under

§727(a)(3) is one of reasonableness. *Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999). "In order to determine if the failure was justified, the trial court must first determine what records someone in like circumstances to [the debtor] would keep." *Sendesky*, 283 B.R. at 764. "The debtor is required 'to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate.' " *Wolfe*, 232 B.R. at 745 (quoting *First State Bank of Newport v. Beshears (In re Beshears),* 196 B.R. 468, 474 (Bankr. E.D. Ark.1996) (citation omitted)). The trustees and creditors must receive enough information "to enable them to 'trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.' " *Matter of Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996) (quoting *In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)). Although there is not one required standard for record-keeping, "courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *Juzwiak*, 89 F.3d at 428.

We see no error in the bankruptcy court's decision that the Debtors failed to maintain adequate records, leaving the court and third parties without a way to determine the Debtors' financial condition and material transactions.

The bankruptcy court appropriately decided that it was left without a way to determine the exact transactions between the Debtors and the jeweler. *See Meridian Bank*, 958 F.2d at 1230 ("[A] discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs."); *Wolfe*, 232 B.R. at 745 (Debtor must take steps to allow a creditor to see what he did with his estate). The record showed that Mr. Dykes was involved with transactions concerning hundreds of thousands of dollars of items, but he kept almost no records of those transactions.

The bankruptcy court appropriately found that the list of watches returned to the jeweler in 2013 does not match the watches listed on invoices submitted at trial

and there was no explanation of what happened to watches listed as paid for on the invoices. The bankruptcy court stated that the Debtors "did not provide credible testimony as to the whereabouts of the other watches." *Snyder v. Dykes (In re Dykes)*, Case No. 16-42199-KHS, Adv. No. 17-4022-KHS, 2018 Bankr. LEXIS 516, at *10 (Bankr. D. Minn. Feb. 26, 2018). We will not second guess the bankruptcy court's adjudication of the credibility of Mr. Dykes's testimony.

We also find merit to the bankruptcy court's determination that the list of the watches and the ring Mr. Dykes returned to the jeweler in 2013 was an inadequate record of the transaction. As the bankruptcy court stated, this list did not include the value of the returned items, amount of credit to the balance owed on the confession of judgment, or amount of remaining debt following the returns. The Debtors argue about other ways to determine the value of the watches, but "the debtor has the duty to maintain and retain comprehensible records." *Juzwiak*, 89 F.3d at 429.

The Debtors submit that Mr. Dykes provided information about transactions with the jeweler through his testimony. Any testimony the Debtors gave concerning their financial affairs does not cure their failure to maintain adequate written records. *See Id.* at 428 ("Oral testimony is not a valid substitute or supplement for concrete written records.").

Overall, we agree with the bankruptcy court's characterization of Mr. Dykes's transactions with the jeweler as sloppy and informal, leaving the court without a means to determine exactly what occurred. And the bankruptcy court necessarily determined that Mrs. Dykes was co-responsible with her husband for the lack of records. We agree.

With respect to the contents of the three large storage bins, we see no error in the bankruptcy court's determination that the Debtors "failed to provide any accounting of the other personal property that they had in the storage containers that

was ultimately disposed of by [the storage company]." *Dykes,* Case No. 16-42199-KHS, Adv. No. 17-4022-KHS, 2018 Bankr. LEXIS 516, at *21. In fact, the language used by the bankruptcy court mirrors the statement in the parties' Stipulation of Facts that "[t]here has not been an accounting of the property in [the] storage bins." And the absence of an accounting is clearly a proper basis for deciding that the Debtors failed to provide adequate records.

The bankruptcy court also appropriately held that the Debtors did not provide justification for their lack of records.

The Debtors claim that Mr. Dykes provided testimony about why the Debtors did not keep additional written records concerning the assets at issue. The bankruptcy court was entitled to treat Mr. Dykes as a non-credible witness and to decide that his testimony failed to demonstrate justification for the Debtors' lack of sufficient written documentation.

The bankruptcy court properly considered the Debtors' education level and sophistication. *See Sendesky*, 283 B.R. at 764 (bankruptcy court examines what someone in circumstances similar to the debtor would keep). It pointed out the fact that the Debtors were "very well educated, sophisticated individuals." *Dykes,* Case No. 16-42199-KHS, Adv. No. 17-4022-KHS, 2018 Bankr. LEXIS 516, at *20. The court set forth the Debtors' professional training and educational backgrounds, the prestigious fellowship earned by Mr. Dykes, the high dollar transactions with which they had been involved (such as the watch and jewelry purchases and the house that they had built), and their scheduled debt exceeding $5 million. It was in this context that the court explained that logically the Debtors would have kept records of what they possessed and what they returned to the jeweler, at the very least, for insurance purposes and to show the balance owing on the confession of judgment. We see no error in this determination.

We also see no error in the bankruptcy court's conclusion that the Debtors' failure to provide an accounting of the contents of the storage bins was unjustified. Contrary to the Debtors' belief, the lack of an accounting for the items in storage is not justified based on the fact that they expected to recover the contexts of the bins when they put the items in storage. The Debtors' subjective beliefs are not the correct inquiry as the standard is one of reasonableness. *Wolfe*, 232 B.R. at 745. The bankruptcy court appropriately reviewed the evidence, found that the contents of the storage bins were worth hundreds of thousands of dollars, and determined that based on the record the sophisticated and highly educated Debtors were not reasonable in failing to provide an accounting of the stored property.

The Debtors raise additional arguments for reversal based on the specific facts of their case, all of which arguments lack merit, and some of which we discuss.

The Debtors take issue with the trial court's characterization of Mr. Dykes's level of watch collection involvement. Regardless of whether Mr. Dykes engaged in the watch transactions as a hobby or a "casual consumer" or as an "avid watch collector" who "routinely purchased watches valued in the tens of thousands of dollars," the bankruptcy court appropriately determined that it would not be reasonable for a person in like circumstances to conduct these transactions as Mr. Dykes did. *See PNC Bank, N.A. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 114 (Bankr. W.D. Pa. 2000) (for nonbusiness assets, standard was what a prudent person facing circumstances similar to that of the debtor would keep). High dollar transactions of sophisticated parties over a significant period of time including items transported over a large geographic area were involved. The bankruptcy court appropriately stated that logic dictated that the parties would have maintained far better records.

The Debtors argue, based on their belief that the court's inquiry included transactions dating as far back as 2008, that the bankruptcy court looked at transactions too far back in time when denying the Debtors' discharge. We disagree.

-10-

Section 727(a)(3) does not set forth a time period for which a debtor must account for his financial condition. The bankruptcy court properly considered the Debtors' transactions in the context of their particular case. *See Juzwiak,* 89 F.3d at 427 (records produced by debtors must provide "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.") (citation and quotation marks omitted); *Shamshovich v. Racer (In re Racer)*, 580 B.R. 45, 53 (Bankr. E.D.N.Y. 2018) ("The determination of what constitutes a reasonable period prior to the filing must be measured on a case-by-case basis, taking into account all of the circumstances of the case."). It was appropriate for the bankruptcy court to consider the ongoing pattern and course of transactions of Mr. Dykes and the jeweler. The court identified problems with the Debtors' records for the watches returned to the jeweler in 2013. It also pointed to the lack of documentation for the years leading up to bankruptcy concerning transactions such as the disposition of items that had been purchased earlier. Without additional records, one cannot tell what transactions occurred and when. In addition, the court appropriately looked to the lack of an accounting for the property placed in storage in 2012 because without an accounting a third party could not tell what was in the storage bins in the first instance.

The Debtors point to the hectic and difficult situation they went through and argue that when the transactions occurred they did not expect to file for bankruptcy. This argument fails as the standard is objective, not one of the Debtor's subjective belief. *Wolfe*, 232 B.R. at 745. "Surely it would be an impractical rule if only those debtors who *planned* to seek bankruptcy protection were required to maintain adequate records." *Ochs v. Nemes (In re Nemes)*, 323 B.R. 316, 329 (Bankr. E.D.N.Y.2005) (emphasis in original).

According to the Debtors, when making its §727(a)(3) determination the bankruptcy court should not have considered: (1) transactions with the jeweler other than those concerning the items returned to it in 2013; and (2) the storage bins,

because facts concerning those matters were not plead in the complaint. We will not consider this argument on appeal because the Debtors did not raise it before the bankruptcy court. *Charles Gabus Motors, Inc. v. Tirrell (In re Tirrell)*, 572 B.R. 720, 724 (B.A.P. 8th Cir. 2017) (issues not raised before the bankruptcy court will not be considered on appeal). The Debtors did not object to the admission into evidence of documents (the invoices) concerning items other than those included on the 2013 list of returned items. Mr. Dykes testified about the transactions with the jeweler and the storage bins without any objection. The Debtors participated in submitting the Stipulation of Facts stating that there was not an accounting of the stored property. And denial of the Debtors' discharge based on these matters was tried by consent.

## CONCLUSION

We agree with the bankruptcy court: The U.S. Trustee met his burden of proving that the Debtors' discharge should be denied under § 727(a)(3). Accordingly, the decision of the bankruptcy court is AFFIRMED.

---